IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CONNIE J. MOORE                                                                                           PLAINTIFF

V.                                                                              CIVIL ACTION NO.4:18-CV-255-DAS

COMMISSIONER OF
THE SOCIAL SECURITY ADMINISTRATION                                                    DEFENDANT

## MEMORANDUM OPINION

Connie J. Moore seeks judicial review pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance and SSI benefits. The parties have consented to have the magistrate judge decide any motions, conduct any hearings and enter judgment in this case, with any appeal direct to the Fifth Circuit Court of Appeals. This action came before the court for hearing on oral argument and was taken under advisement at that time.

The court, after considering the parties' briefs and oral argument, finds that it must affirm the defendant's decision in this case.

## PROCEDURAL HISTORY

This plaintiff's filed for disability and SSI benefits in September 2015, alleging disability as of April 13, 2015. After the denial of her application and denial of reconsideration, a hearing was held on October 6, 2017. The ALJ issued an order denying any benefits on February 14, 2018.

The ALJ found that the plaintiff's sole severe impairment was dysfunction of both knees, arising from osteoarthritis. At step two the ALJ found the claimed back impairment from right sacroiliitis and chronic lumbar strain were not severe impairments. After his review of her medical records, the ALJ determined that the Moore could perform a limited range of light work,

giving great weight to the opinion of a state disability determination doctor. He found Moore's complaints of the intensity, persistence and limiting effects of her symptoms were not entirely consistent with her medical records. Based on the testimony of the vocational expert, the ALJ determined that the plaintiff could work return to her past relevant work as a substitute teacher, a job performed at the light level, and a cashier in a casino, a sedentary job. He additionally found at step five that she could also work as a parking lot cashier.

The plaintiff then filed this appeal. She alleges that the ALJ erred in giving greater weight to the opinions of non-examining physician, than to those of a treating physician's assistant. The state disability determination doctor's report was issued on less than complete medical records. She also asserts that her degenerative disc disease in her back should have been found to be severe at Step 2.

## STANDARD OF REVIEW

A claimant has the burden of proving he suffers from a disability, which the Social Security Act defines as a mental or physical impairment, or combination of impairments, that precludes the claimant from any substantial gainful employment, and that is expected to result in death or that has, or is expected, to last least one year. 42 U.S.C. §§ 216 (i) and 223 (d). In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process. S*ee*, 20 C.F.R. § 404.1520 (2012).

The burden of proving disability rests on the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining the burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2012).

Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities...." 20 C.F.R. § 404.1520(c) (2012). An impairment is not severe "only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience." *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985).

At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, § § 1.00-114.02 (2011). 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, then claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012). *Mershel v Heckler*, 577 F. Supp. 1400, 1405, n.15 (S.D.N.Y. 1984)(The Listing of Impairments … does not provide the exclusive definition of disability under the Act; it provides only a catalogue of 'automatic' disabilities.").

Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work. 20 C.F.R. § 404.1520(f) (2012).

If the claimant is successful at all four of the preceding steps, the burden then shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work. 20 C.F.R. § 404.1520(g)(1) (2012).

If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

This court's review of the Commissioner's decision is limited to an inquiry into whether there is 'substantial evidence, on the record as a whole, to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475.

The court must, however, "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992*).* In assessing the administrative evidence, the court looks to all evidence in the record. There is a notable difference between "'substantial evidence' and 'substantial evidence on the record as a whole.'" *Jackson v. Hartford Accident and Indemnity Co.,* 422 F.2d 1272, 1277 (8th Cir. 1970). Looking to see if there is "substantial evidence on the record as a whole" involves more scrutiny. "The substantiality of evidence must take into account whatever evidence in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 488 (1951). If the Commissioner's decision is supported by the substantial evidence on the record as a whole and does not show an error of law, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

## ANALYSIS

The plaintiff has assigned two errors in her appeal. She asserts that the ALJ erred when he gave great weight to the opinion of a non-examining physician, who did not have the benefit of complete medical records She argues the ALJ should have given greater weight to the opinion of a treating physician's assistant who opined that activity would aggravate Moore's symptoms and render her unable to work.

The ALJ gave great weight to the opinion of the Dr. Hulett who issued her report without the benefit of reviewing the plaintiff's April 2016 x-ray of her knees. [1] The April x-ray spells out findings that indicate some significant arthritis. The April report shows that eburnation of

---

[1] There is also an August 2017 x-ray but the report does not include specific findings merely noting only that there were arthritic changes in Moore's knees, without acute findings. Given that there is no dispute that the plaintiff has some arthritis in both knees, as confirmed by her treating orthopedist and because this later x-ray does not demonstrate any deterioration since the April 2016, the x-ray does not undermine the opinions of the doctors or the ALJ's decision.

the femoral condyle and tibial plateau. Eburnation of the bone is indicative of bone-on-bone osteoarthritis.[2] The right knee also showed narrowing of all compartments and dorsal patellar osteophytes. The findings in the left knee were identical to the findings in the right, except that the narrowing in the left knee was limited to the medial compartment. These appear to be potentially significant findings to be considered before assessing functional capacity.

Without the benefit of reviewing the April 2016 x-ray, Dr. Hulett found that the plaintiff could perform light work with some restrictions not pertinent here. In assessing this RFC, Hullett found that Moore could walk/stand for six of eight hours per day, despite her extreme obesity, with a BMI over fifty. The court initially found this part of the RFC concerning, frankly wondering if her bilateral knee problems, coupled with her obesity, would preclude this level of activity. But the court notes that Hulett reviewed all available records before issuing her opinion, including the reports from the treating orthopedist who performed bilateral arthroscopies and reported that Moore had significant bilateral osteoarthritis in her knees. An x-ray from as early as April 2015 confirmed "moderate varus DJD bilaterally" in the plaintiff's knees. Furthermore, as the defendant points out, a second state disability determination doctor after reviewing this April 2016 x-ray, confirmed Hulett's light RFC, providing further evidence to support the ALJ's RFC determination

The ALJ cannot be faulted for giving greater weight to Hulett's opinion over the examining medical provider when the provider is a physician's assistant and not an acceptable

---

[2] *Daniels v. Colvin*, No. CIV.A. 13-6408, 2014 WL 4186785, at *8 (E.D. La. Aug. 22, 2014)("Osteoarthrosis is a synonym for osteoarthritis, which is "characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes...." *Id.,* STEDMANS 288490. Eburnation is "[a] change in exposed subchondral bone in degenerative joint disease in which it is converted into a dense substance with a smooth surface like ivory." *Id.,* STEDMANS 122970.")

medical source. 20 CFR § § 404.1513(a)(2) and 404.1527 (a). Nevertheless, the ALJ clearly did review and consider the records from this source, explaining the reasoning for giving his opinions were little credit.

In her second assignment, the plaintiff contends that the ALJ erred in failing to find that she had a severe back impairment. While *Stone v. Heckler, supra.,* sets a low standard for finding any impairment is severe the ALJ did not err at Step Two. The plaintiff was seen at Greenwood Leflore Neurology Clinic in March 2014, before her date of onset, for right sacroiliitis and lumbar strain. That clinic's records show that she was referred for a functional capacity examination. Because of her "submaximal effort and inconsistent behavior" it was reported that "no restrictions could be issued" relating to her back problems. Her treating orthopedist, adopting the functional capacity examination, returned Moore to her job duties without any restrictions and found 0 percent permanent impairment. Another treating physician, Dr. Warrington, made intermittent notes of lumbar tenderness but these records predate the alleged onset, and assign no limitations.

After the date of onset, the plaintiff was examined by Dr. Shearin at the request of the agency. He noted some reported tenderness over the lumbar spine. Though Moore complained of pain at 30 degrees of forward flexion, she had a normal range of motion in her back with forward flexion, lateral extension and cervical rotation. Shearin's impression was reported degenerative disc disease with few supporting findings. The other medical evidence relating to her back problems includes a January 2016 x-ray showing a minimal Grade 1 spondylolisthesis at L4 on L5, with normal vertebral heights. A March 2016 emergency room visit, after a fall, showed normal range of motion in the back without spinal tenderness. The records from Brown

show complaints back pain but do not include neurological abnormalities or assign functional limitations.

The records provide substantial evidence to support the ALJ's step two determination.

Because the decision is supported by substantial evidence and there is no prejudicial legal error, the court affirms the Commissioner's decision.

A separate judgment shall be entered.

This the 27th day of November, 2019.

/s/ David A. Sanders  
U.S. MAGISTRATE JUDGE